| Elliott Greenleaf | 1105 N. Market Street, Suite 1700
Wilmington, Delaware 19801
Phone: (302) 384-9400 • Fax: (302) 384-9399 |
|---|---|

www.elliottgreenleaf.com
A Professional Corporation

Jonathan M. Stemerman
(302) 384-9405
jms@elliottgreenleaf.com

April 19, 2013

**VIA HAND DELIVERY**
Hon. Kevin Gross, Chief Judge
United States Bankruptcy Court
District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

    Re:    ***In re Cherokee Simeon Venture I, LLC*, Case No. 12-12913 (KG)**
           **Letter Memorandum Re: Common Interest Privilege of Debtor and Zeneca**

Dear Chief Judge Gross:

      In accordance with the Court's directive at the March 11, 2013 and April 8-9, 2013 hearing (the "Hearing"), Cherokee Simeon Venture I, LLC ("Debtor") and Zeneca Inc. ("Zeneca") jointly submit this Letter Memorandum. Under the clear precedent of this Circuit, including recent decisions by this Court, a legally valid and properly preserved common interest privilege exists between Debtor and Zeneca on issues on which they have a common interest, including among other things virtually all aspects of this bankruptcy and in particular the defense against EFG-Campus Bay, LLC's ("EFG") motion to dismiss or in the alternative transfer ("EFG's Motion to Dismiss") and the preparations for the Hearing.[1] Specifically at issue is the assertion of privilege by Debtor and Zeneca over communications between Brian Spiller, the client representative for Debtor, its counsel, Elliott Greenleaf, and counsel for Zeneca, McCarter & English. As discussed in detail below, communications between Debtor, its counsel and

---

[1] Debtor's and Zeneca's common interest defense extends, without limitation, to the issues upon which Mr. Spiller arguably was questioned and the common interest privilege was asserted – the strategy for cross examination of Mr. Elanjian and the filing of this bankruptcy case. *See* April 8, 2013 tr. at 189:1-212:17, 232:13-236:6; *see also* Declaration of Brian A. Spiller, dated April 19, 2013, ¶¶5-7. Counsel for EFG indicated that he intended to ask all such questions so as to make a record of the matters as to which objections were raised. *See* April 8, 2013 tr. at 204:1-205:1. Debtor and Zeneca reserve all rights to assert and defend their common interest privilege on other matters, including without limitation relating to the bankruptcy proceeding and the Property remediation, should they arise.

Hon. Kevin Gross, Chief Judge
April 19, 2013
Page 2

counsel for Zeneca on matters of common interest fall squarely within the protections afforded by the common interest privilege.

### The Common Interest (or Community of Interest) Privilege

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The Supreme Court has emphasized the importance of the "full and frank communications between attorneys and their clients and...[the] broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. The purpose of full and frank communications is to enable clients to obtain "the aid of persons having knowledge of the law and skilled in its practice." *Hunt v. Blackburn*, 128 U.S. 464, 469 (1888).

Within the broad umbrella of the attorney-client privilege are privileges which protect attorney-client communications among or between parties whose legal interests are aligned on certain issues. One such privilege is the "joint defense privilege," applicable in litigation where two or more clients face a common opponent, and counsel for such parties work together to prepare a defense as part of an ongoing common defense strategy. *See Haines v. Liggett Group*, 975 F.2d 81, 94 (3d Cir. 1992). Other such privileges include the co-client privilege and the common interest (or community-of-interest) privilege.[2] *See In re Teleglobe Communications Corporation*, 493 F.3d 345, 362-66 (3d Cir. 2007).

In 2007, the United States Court of Appeals for the Third Circuit provided a detailed analysis of the joint privileges and, given space limitations here, the Court respectfully is referred to the Third Circuit's analysis in *In re Teleglobe Communications Corporation* in full. *See In re Teleglobe*, 493 F.3d at 362-66. Included in the Third Circuit's analysis is a discussion of the history and purpose of the common interest privilege.

> Recognizing that it is often preferable for codefendants represented by different attorneys in criminal proceedings to coordinate their defense, courts developed the joint-defense privilege. In its original form, it allowed the attorneys of criminal co-defendants to share confidential information about defense strategies without waiving the privilege as against third parties. Moreover, one co-defendant could not waive the privilege that attached to the shared information without the consent of all others. Later, courts replaced the joint-defense privilege, which only applied to criminal co-defendants, with a broader one that protects all communications shared within a proper "community of interest," whether the context be criminal or civil. Thus, the community-of-interest privilege allows attorneys representing

---

[2] *Id.* at 364 n. 20. Although the Third Circuit has noted that "much of the caselaw confuses" the terminology distinguishing between privilege types, for example instances where parties shared an attorney or retained separate counsel, the Third Circuit has specifically clarified that the "common interest privilege" and "community of interest" privilege are "the same." *Id.* at 363 n. 18; *see also In re Tribune Co.*, 2011 WL 386827, at n. 12. (Bankr. D. Del. 2011).

Hon. Kevin Gross, Chief Judge
April 19, 2013
Page 3

> different clients with similar legal interests to share information without having to disclose it to others. It applies in civil and criminal litigation, and even in purely transactional contexts.

*Id.* at 363-64. The common interest privilege thus expands the protections afforded by the attorney-client privilege and the work product doctrine by protecting communications between a client and its attorneys and attorneys of another client outside of litigation. *In re Leslie Controls, Inc.*, 437 B.R. at 496; *see also In re Tribune Co.*, 2011 WL 386827, at *4 (Bankr. D. Del. 2011). "[The common interest privilege] serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243-44 (2d Cir. 1989) (citing *United State v. Bay State Ambulance and Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir. 1989)). "'The need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter....' Neither is it necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney." *Id.* (citations omitted).

### The Three-Part Test for a Common Interest Privilege

To be protected under the common interest privilege, the party invoking the common interest privilege must demonstrate that "(1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not otherwise been waived." *In re Leslie Controls*, 437 B.R. at 496 (citation omitted); *see also In re Tribune*, 2011 WL 386827, at *4.

### A Written Agreement Is Not Required

While there must be an agreement that the parties are engaging in privileged communications on a matter of common interest, a written agreement is not required. *See United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989) (verbal agreement sufficient); *Xerox Corp. v. Google, Inc.*, 801 F. Supp. 2d 293, 303 (D. Del. 2011) (upholding a common interest privilege without a written agreement); *Am. Mgmt. Services, LLC*, 842 F. Supp. 2d 859, 876 (E.D. Va. 2012) ("The common interest doctrine requires a meeting of the minds, but it does not require that the agreement be reduced to writing or that litigation actually have commenced"); *see also In re Teleglobe*, 493 F.3d at 363 (noting in the context of that case, a co-client representation, that while written agreements "might be preferable, nothing requires this so long as the parties understand the limitations"). "[A] claim resting on the common interest rule requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *Schwimmer*, 892 F.2d at 243-44 (citations omitted).

Hon. Kevin Gross, Chief Judge
April 19, 2013
Page 4

### Complete Unity of Interest Is Not Required

The common interest privilege "does not require a complete unity of interests among the participants. The privilege applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects." *In re Leslie Controls*, 437 B.R. at 497 (citation and quotation omitted).[3] "The common interest of the parties must be 'at least a substantially similar interest'" but "the parties need not be in complete accord." *Id.* at 496. "'[I]t is sufficient to recognize that members of the community of interest must share at least a substantially similar legal interest.... In the community of interest context, ...because the clients have separate attorneys, courts can afford to relax the degree to which clients' interests must converge without worrying that their attorneys' ability to represent them zealously and single-mindedly will suffer.'" *In re Tribune*, 2011 WL 386827, at *4 (quoting *In re Teleglobe*, 493 F.3d at 366) (alterations in original).

### The Common Interest Privilege Applies to a Debtor and Another Party

The common interest privilege may be properly invoked in a Bankruptcy context between a debtor and another party. *See In re Tribune Company*, 2011 WL 386827 (Bankr. D. Del. 2011) (enforcing a common interest privilege where parties shared a common legal interest in obtaining approval of their settlement and confirmation of a plan); *In re Leslie Controls*, 437 B.R. 493, 496 (Bankr. D. Del. 2010) (enforcing a common interest privilege between a debtor, an ad hoc committee, and a prepetition future asbestos claims representative); *Kaiser Steel Corp. v. Frates*, 84 B.R. 202, 205 (Bankr. D. Colo. 1988) (enforcing a common interest privilege between the debtor-in-possession and creditors committee, finding that "[t]he Committee and the Debtor have common interests. Each has an obligation to seek to maximize the assets in the Debtor's estate").

Likewise, the common interest privilege is properly applied to a debtor and an affiliate company. *See, e.g., In re Quigley Company Inc.*, 2009 WL 9034027 (Bankr. S.D.N.Y. 2009) (enforcing a common interest privilege between the debtor and a parent company). Indeed, in *In re Teleglobe* the Third Circuit noted the reality of relationships between corporate parents and corporate subsidiaries, acknowledging that "a corporation can *only* act at the direction of whoever controls it" and "[i]t is a bedrock principle of corporate law in Delaware and elsewhere that courts must respect entity separateness unless doing so would work inordinate inequity." *In re Teleglobe*, 493 F.3d at 371.

---

[3] Relevant to the common interests between Debtor and Zeneca, in *In re Leslie Controls*, Judge Sontchi held that parties who shared information regarding preserving and maximizing insurance available to pay asbestos claims during the plan negotiation process shared the common interest of maximizing the asset pool. *In re Leslie Controls*, 437 B.R. at 502.

Hon. Kevin Gross, Chief Judge
April 19, 2013
Page 5

### The Common Interest Privilege Protects The Communications In Question Between Debtor, Elliott Greenleaf and McCarter & English

The relevant test for a common interest privilege is plainly met on the occasions where privilege was asserted during the Hearing. First, "the communication was made by separate parties in the course of a matter of common interest." *In re Leslie Controls*, 437 B.R. at 496. The communications on which EFG sought testimony, and to which Debtor and Zeneca objected, were made between Debtor (through Mr. Spiller who was authorized by Debtor's Manager – Zeneca – to act as Debtor's Authorized Representative), its counsel and Zeneca's counsel and related to their common prosecution of the bankruptcy case.[4] *See* April 8, 2013 tr. at 191:2-212:17, 232:13-236:6; *see also* Declaration of Brian A. Spiller, dated April 19, 2013, ¶¶5-7. Second, "the communication was designed to further that effort." *See* April 8, 2013 tr. at 204:1-207:12; *see also* Declaration of Brian A. Spiller, dated April 19, 2013, ¶6. It is undisputed that the communications at issue were designed to further Debtor and Zeneca's objection to EFG's Motion to Dismiss and the preparation for the Hearing. *Id.* Third, "the privilege has not otherwise been waived." Declaration of Brian A. Spiller, dated April 19, 2013, ¶7. No parties other than Debtor, its counsel (Elliott Greenleaf) and Zeneca's counsel (McCarter & English) have been involved in these discussions or communications. All relevant communications occurred through, or in the presence of, counsel. *Id.* No such communications have been forwarded to any other party. *Id.*

Accordingly, Debtor and Zeneca respectfully request that their objections to the questions posed by counsel for EFG be sustained and the record of the Hearing be closed. Additionally, given the plain law on this issue, the undisputed evidence, the fact that EFG's counsel already has had an opportunity to examine Mr. Spiller on this issue (*see, e.g.,* April 8, 2013 tr. at 204:1-207:12), and the burden which will be imposed on Debtor in particular by having to defend a deposition in Florida, Debtor and Zeneca respectfully suggest that no further testimony on this issue is necessary.

Respectfully Submitted,

Jonathan M. Stemerman

Enclosure

cc:   All Counsel of Record (via CM/ECF)

---

[4] While it is not at issue before Your Honor given the limited scope of EFG's inquiry, *see* footnote 1, *supra*, for the avoidance of any dispute, Debtor and Zeneca believe that their interests are aligned and are thus matters of common interest in virtually all aspects of this bankruptcy, as well as in property and environmental matters.