**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHEROKEE SIMEON VENTURE I, LLC, | ) | Case No. 12-12913(KG) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | **Re Dkt. Nos. 225 & 239** |

**MEMORANDUM OPINION RE BAD FAITH AND SANCTIONS**

The Court has been asked to make a finding of a bad faith bankruptcy filing and to impose sanctions. The Court finds that the request is both procedurally and substantively deficient. Before the Court are the Closing Memoranda filed by creditor EFG-Campus Bay LLC ("EFG-Campus Bay") and Cherokee Simeon Venture I, LLC (the "Debtor"), joined by Zeneca, Inc. ("Zeneca"). EFG-Campus Bay, which is seeking the bad faith finding and sanctions, never filed a motion. EFG-Campus Bay alleges that the Debtor filed its bankruptcy petition in bad faith and that it, EFG-Campus Bay, is entitled to attorney's fees and consequential damages. For the following reasons, the Court finds that the Debtor did not file in bad faith and, accordingly, EFG-Campus Bay will not be awarded fees or damages.

BACKGROUND

In 2002, the Debtor was jointly owned by Zeneca and Cherokee Simeon Holding Company, LLC ("Cherokee"). (Declaration of Brian A. Spiller ("Spiller Decl.") at Exs. 1, 2.) Cherokee served as the Manager and Managing Member of the Debtor until April 2011 when Zeneca assumed the Manager position. (Spiller Decl. at ¶¶ 12, 13.) The

Debtor purported to "acquire, own develop, manage, finance, sell and lease, and to otherwise hold real property" in Richmond, CA (the "Property"). (Spiller Decl. at ¶ 10.) On September 15, 2006, the California Department of Toxic Substances Control issued a remediation order mandating the remediation of the Property. (Spiller Decl. Ex. 15 at ¶ 13.) The Debtor was obligated to pay for remediating a portion of the Property, capping a portion of the Property, and  monitoring and investigating the Property. (Spiller Decl. at ¶ 14.)

In 2007, the Debtor entered into a Loan Agreement with Continental Environmental Redevelopment Financial, LLC ("Continental") for up to $42,000,000.00, for remediation and maintenance costs of the Property. (Spiller Decl. at ¶ 20.) Continental later changed its name to EnviroFinance Group, LLC ("EFG"). (Spiller Decl. Ex. 15, at ¶ 1, Ex. 26 at ¶ 1.) Continental, now known as EFG, later assigned its interest in the Loan Agreement to CERF SPV I, LLC ("CERF"). (Spiller Decl. at ¶ 21, Ex. 15 at ¶ 4, Ex. 26 at ¶ 8.) EFG is the sole member of CERF. (March 11, 2013 Hrg. Tr. at p 19.) As of October 18, 2012, Debtor had drawn approximately $14,200,000 on the loan. (Spiller Decl. at ¶ 21.)

In March 2010, CERF sent a notice of default to the Debtor, indicating a principal balance due of $19,000,199.56 and $135,909.56 in interest. (Spiller Decl. at ¶ 26.) On September 10, 2010, CERF sent another letter to the Debtor indicating $1,546,660.82 in past due interest. (Spiller Decl. at ¶ 27.) On August 8, 2011, counsel for Zeneca sent a letter to CERF seeking supporting documentation for the amounts asserted. On September

1, 2011, counsel for CERF responded by indicating that all documents had been previously provided and that requests for the documentation did "not seem necessary at this time and will be more appropriately addressed in the pending or future litigation between the parties." (Spiller Decl. at Ex. 12.)  On November 3, 2011, CERF sent yet another letter to the Debtor, asserting default and seeking immediate payment of $51,978,507.00. (Spiller Decl. at ¶ 27.)

In June 2012, CERF settled a lawsuit against two Cherokee entities[1] relating to a guaranty of the Debtor's obligations. (Spiller Decl. at ¶¶ 31, 32.) Although the Debtor requested information regarding the settlement, neither party provided the settlement agreement or details of its terms. (Spiller Decl. at ¶ 32.) However,  CERF did disclose that certain unspecified claims by Cherokee against Zeneca were transferred to EFG-Campus Bay along with CERF's interest in the Loan Agreement (Spiller Decl. at ¶ 32.) EFG-Campus Bay is owned by EFG and an affiliate of Cherokee. (March 11, 2013, Tr. at p 15.)

On January 31, 2012, CERF initiated foreclosure proceedings against the Debtor in the Contra County Superior Court, alleging that the Debtor defaulted on its obligations under the Loan Agreement. (Spiller Decl. at ¶ 53.) The Verified Complaint alleged that the Debtor owed $29,781,101.73 in principal and $6,781,002.38 in unpaid interest. (Spiller Decl. Ex. 26 at ¶¶ 89(m), (n).) As part of the litigation, at the request of CERF,

---

[1]  The two Cherokee entities are Cherokee Investment Partners III Parallel Fund, L.P. and Cherokee Investment Partners III L.P.  Both own Cherokee Richmond, LLC, which at the Debtor's formation held a 96% interest in Cherokee, but as of April 29, 2011, was the sole member of Cherokee, a member of the Debtor. (Spiller Decl. Exs. 1, 2.)

the state court appointed a receiver to control the Property. (Spiller Decl. at ¶ 55.) The receiver reinstated certain leases of the Property that caused the Property to operate at a loss. (Spiller Decl. at ¶¶ 56, 57.)

On October 23, 2012, the Debtor filed its petition for Chapter 11 protection. On November 14, 2012, the Debtor moved to reject all leases and terminate the receiver's duties.  The Debtor also filed a motion to retain counsel, a motion to access insurance proceeds to pay expenses, a motion to use cash collateral, and a motion for authorization to obtain debtor-in-possession financing. EFG-Campus Bay filed an opposition to each of these motions.[2] On November 28, 2012, EFG-Campus Bay moved to dismiss the case or transfer venue to the Northern District of California. Prior to a hearing on EFG-Campus Bay's motion to dismiss, the Debtor filed an emergency motion to dismiss. On May 31, 2013, the Court entered an order dismissing the case with prejudice.  Thereafter, the parties each submitted memoranda on the issue of bad faith.

EFG-Campus Bay argues that the reasons advanced by the Debtor at the hearing on the motions to dismiss do not serve a valid bankruptcy purpose. EFG-Campus Bay states that the Debtor gave five reasons for the bankruptcy: (1) to obtain transparency and an accounting of claims; (2) to provide the Debtor opportunities to challenge improper claims; (3) to halt the foreclosure of the Property without a verification of the underlying debt; (4) to investigate causes of action against the lender and Debtor's former manager;

---

[2] EFG-Campus Bay filed a limited objection and reservation of rights with respect to the retention motion based on Debtors failure to seek authority to use cash collateral and the lack of EFG-Campus Bay's consent to use cash collateral.

and (5) to obtain a breathing spell to formulate a Chapter 11 plan. EFG-Campus Bay suggests that of the reasons Debtors asserted to avail itself of the bankruptcy process, the Debtor did not use the claims process or attempt to verify the debt. Additionally, the Debtor did not stop the foreclosure or effectuate a sale or bona fide restructuring. EFG-Campus Bay further argues that even had the Debtor acted on its alleged reasons, such reasons do not justify filing the petition. Finally, EFG-Campus Bay argues that filing the bankruptcy petition was a litigation tactic designed to allow non-debtor Zeneca to function outside of Chapter 11 while benefitting from the automatic stay. At the end of its Memorandum, under the heading of "SANCTIONS; DAMAGES; REMEDIES" EFG-Campus Bay asserts an entitlement to at least $558,590.03, stating that it has incurred $412,612.41 in legal fees and costs from the Chapter 11 case and $143,853.78 in consequential damages.

On the other hand, in its closing brief, the Debtor argues that the petition was filed in good faith because the Debtor sought a breathing spell (1) to explore offers to buy the Property; (2) to manage the leases on the Property to create a positive cash flow; and (3) to examine the claims against the Debtor and prospective causes of action. The Debtor argues that EFG-Campus Bay's conduct, in particular the failure to provide information supporting its right to pursue claims against the Debtor, created the need to file the petition. Furthermore, the Debtor argues that the bankruptcy petition was not a litigation strategy, but a business decision designed to allow the Debtor access to information about

its debt obligation and the guaranty settlement and to enable the Debtor to investigate

possible mismanagement while protecting the rights of creditors and tenants.

DISCUSSION

*15375 Memorial*

In arguing the issue of bad faith, the parties heavily rely on *15375 Memorial Corp.*

*v. BEPCO (In re 15375 Memorial Corp)*, 589 F.3d 605 (3d Cir. 2009). In *15375*

*Memorial*, the debtors, a dissolved gas exploration company and its parent holding

company, filed for Chapter 11 protection during three pending state court actions initiated

against the debtors and others and shortly after the execution on a demand note which

required the debtors to accept all liabilities and indemnify their ultimate parent company.

The debtors used this demand note to fund the bankruptcy costs. The debtors asserted that

they filed the bankruptcy petitions due to concerns with the effect of the piecemeal multi-

state litigation and the effect on parent companies. BEPCO filed a motion to dismiss the

petition for lack of good faith which the bankruptcy court denied.

On appeal from the District Court's reversal, the Court of Appeals focused on the

two factors relevant to good faith: "'(1) whether the petition serves a valid bankruptcy

purpose' and '(2) whether the petition is filed merely to obtain a tactical litigation

advantage.'" *Id.* at 618 (quoting *NMSBPCSLDHB, L.P. v. Integrated Telecom Express (In*

*re Integrated Telecom Express)*, 384 F.3d 108, 119-20 (3d Cir. 2004).

The Court of Appeals explained that a petition serves a valid bankruptcy purpose if

it "preserved a going concern or maximized the value of the debtor's estate." *Id.* at 619

6

(quoting *Integrated Telecom*, 384 F.3d at 120).  The Court further explained that a party cannot establish good faith based on its desire to avail itself of the protections of the Bankruptcy Code.   *Id.* at 622.  Noting that the debtor's representative was primarily concerned with the non-debtor parent companies' liabilities, the Court of Appeals found that the identified purposes for filing bankruptcy "were either events that could have occurred outside of bankruptcy, or were based on procedural benefits… that cannot be said to have maximized the value of the Debtors' estates." *Id.* at 625.

Turning to the second factor, the Court of Appeals agreed with the Bankruptcy Court's finding that the state court litigation was the principal factor for the filing. *Id.* at 625.  Noting that the bankruptcy filing provided tactical advantages for not only the debtors, but for the non-debtor parent companies as well, the Court of Appeals concluded that "the Debtors filed their petitions primarily as a litigation tactic." *Id.* at 626.  The Court of Appeals therefore affirmed the District Court's order to dismiss the case.

On December 28, 2009, the Third Circuit judgment affirming the order to dismiss the case was entered in the bankruptcy case. On February 1, 2012, BEPCO filed a motion for sanctions under Rule 9011 based on the bad faith filing. This Court ruled on the sanction motion and granted, in part, the sanction motion on June 14, 2010.

Bad Faith

The first factor to consider is whether the Debtor filed its petition for a valid bankruptcy purpose. *15375 Mem'l*, 589 F.3d at 618.  Although the Debtor primarily sought to obtain the benefits of the Bankruptcy Code's protections, the facts of this case

7

are clearly distinguishable from *15375 Memorial*. Here, the Debtor has assets --
insurance and the Property. The Debtor has asserted that, despite its protests, the state
court receiver was operating the Property at a significant loss because of the lease
agreements. The Debtor argues that it filed the bankruptcy petition with the intention of
enabling the Debtor to negotiate more beneficial leases or, alternatively, sell the Property
at a fair price. Unlike *15375 Memorial*, where the bankruptcy petition primarily limited
the liabilities of the debtors and non-debtor parents, here the Debtor was attempting to
preserve the value of the Property or maintain it as a going concern.[3]

 The second factor the Court must consider is whether the bankruptcy was filed
"'merely to obtain a tactical litigation advantage.'" *15375 Mem'l*, 589 F.3d at 618. Here,
the Debtor filed the petition shortly after the initiation of a foreclosure proceeding against
the Property and the appointment of a receiver. Unlike *15375 Memorial*, where the state
court lawsuits were *in personam* against the debtor, here, the foreclosure is an *in rem*
proceeding against the Property, owned by the Debtor. While the petition was filed to stay
the foreclosure in an attempt to retain the asset and assess the debt it secured, it was not
filed merely for a tactical advantage in the foreclosure proceeding as contemplated by the
Court of Appeals. Chapter 13 dockets across the nation are filled with individual debtors
who have filed a bankruptcy petition while defending foreclosure proceedings simply to

---

[3] While EFG-Campus Bay argues that the Debtor failed to meaningfully avail itself of the bankruptcy process to analyze the claims against the Property or attempt to market the Property, it is notable that EFG-Campus Bay opposed nearly every motion filed by the Debtor, leaving the Debtor not only to face the difficulties of a reorganization, but also to litigate against EFG-Campus Bay.

save their homes.   Thus, filing a petition to preserve property is not indicative of bad faith.

The Debtor had bona fide reasons to file the case.   It was attempting to preserve the Property, to eliminate what it believed were crippling leases entered into improvidently by the receiver and to obtain information its lender withheld about how much it owed to EFG-Campus Bay.   And when the Debtor realized its efforts were being thwarted, the Debtor filed for bankruptcy to protect its interests.   Later, when Debtor recognized its bankruptcy would not succeed, the Debtor dismissed the case.

<u>Sanctions</u>

EFG-Campus Bay is seeking to recover its attorney's fees and damages without asserting a specific legal theory.   A bankruptcy court may award sanctions under either of two legal authorities, Federal Rule of Bankruptcy Procedure 9011 or its inherent powers. Federal Rule of Bankruptcy Procedure 9011, "provides for the imposition of attorney's fees as a sanction for the improper filing of papers with a court." *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). Rule 9011 purports to streamline litigation by "deter[ing] litigation abuse that is the result of a particular 'pleading, written motion, or other paper.'" *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 (3d Cir. 2008). The test for sanctions under Rule 9011 is the objective reasonableness of the party's belief, under the circumstances, at the time the paper was filed. *In re Aphton Corp.*, 423 B.R. 76, 96 (Bankr. D. Del. 2010).

A court also has the authority to award sanctions through its inherent power to "discipline attorneys who appear before it," for actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1224 (3d Cir. 1995) (quoting Chambers, 501 U.S. 32). This authority provides courts with the discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. Thus, "in narrowly defined circumstances, federal courts have inherent power to assess attorney's fees against counsel." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980). Specifically, where a court finds "'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party." *Chambers*, 501 U.S. at 46 (quoting *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)). Examples of such fraud include the "delay[] or disrupt[ion of] litigation or [] hampering enforcement of a court order." *Id.* (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n. 14 (1978)).

The distinction between the inherent power to sanction and Rule 9011 sanctions is that a court must first find bad faith to invoke its inherent power. *Fellheimer*, 57 F.3d at 1225 (citing *Chambers*, 501 U.S. at 49). As the inherent power is completely within the court's discretion, it should be exercised with restraint. *Id.* at 1224. Rule 9011 does not preclude a bankruptcy court from exercising its inherent power to sanction. *Id.* However, "when there is bad-faith conduct in the course of litigation that could be adequately

sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers*, 501 U.S. at 50.

Rule 9011 explicitly requires a party to move separately for sanctions by stating that such "motion for sanctions under this rule *shall* be made separately from other motions *or requests*…." Fed. R. Bankr. P. 9011(c)(1)(A) (emphasis added). Furthermore, "a party cannot file a motion for sanctions or submit such a motion to the court if the challenged paper, claim, defense, contention or denial is withdrawn or corrected within twenty-one days after service of the motion on the offending party." *Schaefer Salt*, 542 F.3d at 99 (citing Fed. R. Civ. P. 11(c)(2), Fed. R. Bankr. P. 9011(c)(1)). However, the Third Circuit has recognized that the amendments to Rule 9011 provide an exception to the 21-day safe harbor provision where "the offending 'paper' is a petition for bankruptcy." *Id.* at 100 (citing Fed. R. Bankr. P. 9011(c)(1)(A)).

The Third Circuit has adopted a rule under which a motion for sanctions must be filed prior to entry of a final judgment. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 100 (3d Cir. 1988). However, a court may, if appropriate, impose sanctions even though the motion was filed after a voluntary dismissal. *Schaefer Salt*, 542 F.3d at 98 (citing *Schering Corp. v. Vitarie Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989)).

EFG-Campus Bay alleges that the Debtor engaged in bad faith conduct by filing the petition, which for the purposes of Rule 9011 constitutes a paper. EFG-Campus Bay did not, however, follow the explicit requirements of Rule 9011 by filing a separate motion for sanctions. As Rule 9011 exempts from the 21 day safe harbor motions for

sanctions  based on the filing of a bankruptcy petition, EFG-Campus Bay could have but did not file a sanction motion upon its first inclination that the case was filed in bad faith.

 EFG-Campus Bay pointed out in its brief that it made the Debtor aware of its intention to seek sanctions prior to the March 11 hearing, over four months after the petition was filed, over three months after it filed its motion to dismiss, nearly three months before it filed the brief on bad faith, and almost 6 months before the request to decide the issue on papers. To date, EFG-Campus Bay has not filed a motion for sanctions.

 The Debtor's voluntarily dismissal of the case was not a bar to EFG-Campus Bay's ability to file a sanction motion. It did not file such a motion.  The Third Circuit has already recognized that the voluntary dismissal of a bankruptcy case does not preclude a party from seeking sanctions under Rule 9011 for the bad faith filing of a petition. In *15375 Memorial* the parties seeking sanctions properly filed a motion for sanctions after the Third Circuit judgment ordering dismissal of the case. EFG-Campus Bay did not file a motion.   Accordingly, the Court cannot award sanctions under Rule 9011.

The Court also will not award sanctions under its inherent powers as such sanctions should not be awarded where Rule 9011 applies. Even if the Court could appropriately exercise its inherent power to sanction, the Court does not find bad faith in the Debtor's filing of the petition.

Dated: November 12, 2013

KEVIN GROSS, U.S.B.J.